Case number 24-3604 Eaton Corporation v. Angstrom Automotive Group LLC Argument not to exceed 15 minutes per side. Mr. Gould, you may proceed for the appellant. Good morning. Good morning, judges. May it please this honorable court, my name is Seth Gould and I represent the appellant Angstrom Automotive Group. I'd like to reserve five minutes for rebuttal. This case turns on a single rule of Ohio commercial law. A buyer who accepts goods must give the seller reasonable notice of breach or the buyer is barred from any remedy. So does that correctly state the Chemtrol opinion about what is required? And specifically you used the word breach? Breach is debated in all these cases, not just in Chemtrol. Chemtrol, as my briefing has indicated, did not involve the unique facts of this case, which was that the parties under... Your view is Chemtrol doesn't apply here? I think it does not apply here. It was limited in its... But I also have argued... The Ohio pattern jury instructions apply here? They're the beginning point for any type of jury instruction. If you're a district court judge and you've addressed a summary judgment motion where the buyer has admitted that the parties agreed in their supply contract that if there's a breach, the parties have agreed that there has to be a written notice of breach. In the instance of the seller breaching, it has to go to the CFO of the corporate office. And there's no dispute in the record, even before the trial, that there was no such written notice of breach provided. There was no argument then just that the term of the contract between the parties kind of supplanted a Chemtrol test, and therefore that's why Chemtrol doesn't bind here? Chemtrol said, we're going to decide what notice of breach is in this particular case. It didn't say, we're going to decide notice of breach for all warranty cases. And it didn't have any language or argument in that case, unlike this one, Judge Blumkatz, that the parties in this case agreed to have written notice of breach. In Chemtrol, and I think it actually helps us. I'm not running away from Chemtrol. I can embrace it. And I can say that in a related provision and discussion of that opinion, where it dealt with a situation called the economic loss doctrine, the parties in that supply contract, they did address allocation of responsibility for economic loss. And guess what? The Supreme Court of Ohio enforced the party's agreement. In our case, both the court, the district court, respectfully, and Eaton didn't abide by, and in fact, delayed three years in providing any type of written notice of breach. You have plants that are dealing with each other. You've got quality people at a very low level, and they're dealing with quality issues all the time. The parties in this case, Judge Sutton, they negotiated a provision that would say, we don't want this to get lost in the shuffle if there's an issue that's important to our customer. Instead, we want you to notify us up at the corporate office if you think we're in breach. And incredibly, in this particular case, there was a real reason for a significant delay in notifying my client. And it had to do with the resourcing that was actually contrary to the party's exclusive supply contract. And they even admitted pre-trial and then again during trial that they didn't even open up any type of discussion about financial responsibility until more than two years after the customer, Eaton, knew that these levers were breaching, were breaking in clutches. You have two years at a minimum where they admitted they didn't even open up the dialogue. They didn't open up the dialogue because they didn't have their replacement supplier ready and ready to go in supplying these widgets, in this case, these levers. Wait, can we take out the contract for a second if that's not in the picture? Yeah. Do you have to have a discussion of financial responsibility for there to be sufficient? I think Chemtrail would govern in that particular instance. And if you don't have a written contract that says you have to tell us at the corporate office that we're in breach, then Chemtrail would govern. Because in that case, there wasn't any such discussion or facts that, and in that case, there was this argument that Chemtrail, the Supreme Court said, it can be inferred. It can even be constructive knowledge. But those cases are really different than this case. Because of the contract itself. Not just that. Actually, because Eaton used to make the lever in-house. It designs the lever. It outsources this product to us. We make it for 13 years without any issues. And then all of a sudden, unbeknownst to us, there's a big spill, a warranty spill. And in this case, my client caught Eaton in this secret resource because of a bad email that went out that shouldn't have gone out to my guys. And they sent a written notice of breach. And it goes to the legal department. It's supposed to go to the legal department. My guys say, no breach. I mean, you're in breach, Eaton. And Eaton doesn't say, no, no, no, no, wait a minute. You're in breach. They don't do that. So I don't think Chemtrol is totally controlling. But I think we can rely on it. Because they did enforce the party's agreement under 1301.302. Can I run this idea by you? Let's say my take on it is Chemtrol is a broader view. And it's a clear switch from the prior rule which we had embraced, the Sixth Circuit, that you really just got to be clear about this. And the Bright Line rule made a lot of sense. So I found myself wondering, why would you change it? And what seems to me quite wise about changing it was that you want to keep the lines of communication open between the two parties. And the word breach is a fighting word. And it can often end conversations. It means you go to court. And so I found myself saying, well, I guess that makes some sense as to why they did it. Do you think I'm right as to why they changed it? And if so, I have to say, again, this is, I guess, a hurtful question to you. But this case kind of illustrates it. People are trying. They're in the business not of lawsuits. They're in the business of making things, both sides. They want to keep doing it. They want to fix it if they can. So the idea is to play it out without words like breach, which end a lot of conversations. Well, that's why I watered it down in the jury instruction. That's why I didn't say breach. You don't have to use the magic word breach. But the fair understanding of what Chemtrol and all these other cases about is knowing that you're financially responsible. Because you need to open up an opportunity for settlement discussions, okay? And in this case, those settlement discussions were not open. They didn't initiate. We were duped into signing a later agreement. And Chemtrol, just your honor, Judge Sutton, if I supply you with a machine that I design and I manufacture, and the machine breaks down and I know it, and you haven't told me I'm in breach, I know I'm in breach. But in this case, where the machine is designed, here the clutch is designed by Eaton, the levers are designed by Eaton. They tell us that there's a problem. We fix it. They change the design of the lever. The reason why you need to say you're financially responsible is because of everything that happened in this case, where evidence was spoliated. Well, maybe this was another way of getting at what Judge Blomkatz was asking. I assume you can... Chemtrol's the background principle. You can still have a contract that requires notice to have the word breach, can't you? You can contract around this if you want. You can contract below it. You can contract over it. That's right. And that's what we did here. We contracted so that if you think that... What part of the contract says that? It's in the provisions of six point... What's the best phrase? Give me the best phrase. It says, any notice under this contract must be in writing and sent to our CFO. Raj Banga. And that never happened. Never happened. They continued ordering and accepting our products. There was no stop payment ever. They never rejected any of our products. They put the levers that they thought were defective in clutches that were at a lower torque level. They never demanded payment. They never debited, even though the contract provides that if you think that... I see your light is on. You can keep going, but you'll be using your rebuttal time, so that's your call. No, I'm done for now. I'll reserve it. Thank you very much for your questions. All right. Thank you. We'll hear from... I guess it would be Eaton. Good morning. Good morning. May it please the court. My name is Emily Anglewitz. I'm here on behalf of Eaton today. I'll start with the notice issue since that was what was discussed a lot during the opening presentation. There was a lot of discussion by my friend on the other side about the facts at trial at this case. And just wanted to put this into perspective that whether there's sufficient notice, it's a factual issue for the jury to decide. And Eaton presented more than sufficient evidence that there was notice. Engstrom did not move for a judgment as a matter of law under Rule 50, nor is Engstrom challenging the sufficiency of the evidence related to the notice on appeal. I hear Engstrom's argument to be at least in somewhat significant part that there was this term of the contract that changed what the typical notice requirement would have to be. And I have the language as being that you have to have the notice in writing for notices or other communications which are required or permitted under the agreement. And I was wondering if you might address this more contract-based argument. Sure. So our position is that this notice defense is created by Ohio's UCC statute. And so that creates the defense and that creates the standard. And Engstrom has not cited any case law holding that any language in a contract somehow supplants this standard. And then also kind of putting this more into perspective, you know, their primary argument relates to a jury instruction. That's reviewed by this court for an abuse of discretion. And as Judge Sutton pointed out, the district court used Ohio's pattern jury instruction, which is directly based on chemtrol. Can I just interrupt to get just back to anything about breach or no breach. What he did say, though, was notice was supposed to go to whatever, the COO, the CFO, I don't remember exactly. Did that happen? Was that played out below or is that something that's being raised here for the first time? So there's plenty of evidence that notice was provided in writing via emails, via defective materials reports. But primarily our position is this is a statutory defense. And so that's what creates defense here. It's also a defense, you know, there were three claims, breach of contract, breach of express warranty, and breach of implied warranty. Jury found in favor of eating on all of those claims. The implied warranty claim is outside of the contract itself. So essentially any issue would be harmless. But damages, just real quick, but the damage is the same for all three theories? Yes, correct. I see. Yes. I mean, would you disagree that the parties could, if they wanted to, kind of contract around this provision? This is essentially the standard UCC provision. Like, could they say, if you are ever going to sue us before you ever sue us for any claim, you need to provide us notice in writing, you know, to the this COO? I'm not saying that happened here, but as a theoretical matter, couldn't they contract around this provision? In theory, perhaps a party could, but that's not what happened here. So there's nothing in the party's contract that provides that this defense would somehow be supplanted by that language. This was simply a general provision in the contract regarding notices under the agreement. But also, you know, kind of stepping back, this issue really wasn't preserved. You know, we're looking at the jury instructions. If you look at the conference that the district court judge had on the record, this issue of, okay, it needs to be in writing, that was never requested by Engstrom. At the end of the day, when they're talking about the objections to the pattern instruction, Engstrom's objection was only that, you know, this needs to show that they're holding them financially responsible. So really, that was the issue that was presented to the district court judge. And so how can the court have abused her discretion in, you know, failing to give an instruction that wasn't even requested and for an objection that wasn't even made? So I don't think that the court even really needs to get to that issue because it's been waived under these circumstances in this case. And ultimately, it really doesn't matter because there was ample evidence provided of written notice. It's not prejudicial in this case. And so, you know, at the end of the day, there was, you know, there's a list and there's bullet points in our brief of all of the different ways that notice was provided. And again, this was a factual issue for the jury, whether it was sufficient. The jury instruction was appropriate, was consistent with Ohio law. So we would ask that the court affirm that. I could briefly address some of the other issues on appeal. I don't think we need that. He didn't raise them. So I mean, we'll deal with it on the briefs, but I don't think there's any reason unless I don't think my colleagues have any questions. Okay. Thank you very much. Thank you very much. We'll hear Mr. Gould's rebuttal. I promise to be very short, Your Honor. The UCC, specifically ORC 1301.302, provides that merchants can, in fact, define the standard of performance under the UCC. And that's what the parties did here. And I would add further before I conclude that the jury instruction, as detailed in our reply brief and in our original brief, we preserve this issue. We worked with Judge Brennan very hard to get the right type of language for this jury instruction. She even had in chambers written notice and then she didn't. And then she told me and brother counsel during the trial, all of your objections, Mr. Gould, are preserved regarding the notice of breach. It does not follow Ohio law. It's contrary to Ohio law. It ignores the party's agreement and it bars their claim in total. It's a $30 million claim that was found. It's an issue of law. It's decided by cases standard and Lincoln Electric, which are cited at pages 33 and 34. Frequently, it's decided as a matter of law. It's not just an issue of fact. It can be an issue of fact. Here, the judge erred. Do you have any doubt as to why, if you're right on this, it would affect the implied warranty verdict? It says, that's a new one on me. It hadn't been briefed. Maybe you can challenge what she said on another ground. You can say it's not true that the $30 million judgment could be premised independently on any of the three causes of action. I don't think that would be accurate, Judge Sutton. They were seeking the same amount of damages. It was the same fact pattern, whether it's implied merchantable or breaches a warranty. That seems to support her argument, doesn't it? Well, I didn't have that argument and it wasn't briefed by Eaton. I think that any type of notice required under the supply contract would include any type of statutory notice required under this contract. Every merchant understands that if the customer's unhappy with the widget that's being supplied, they have an obligation to advise their seller that they have to provide a notice of breach. Ohio law says you don't have to use the magic word breach, but Chemtrol is being abused in this situation and argued that the pattern jury instruction follows Chemtrol when it does not follow Chemtrol. Is it enough to say, maybe not the words like you are in breach, but what you are giving us is non-conforming? No, just a problem of goods, Your Honor. Doesn't the contract itself require you to supply conforming goods? So if the other party is telling you, you didn't supply conforming goods, that's pretty close to saying you breached? Well, in this particular case, if you send a DMR and if the DMR says two of your levers are non-conforming when you supply us with hundreds of thousands of levers, it's not a material breach of the contract. It's just tweak your tooling machine and make the levers better. In fact, they never heard by my client, by Eden, would have been completely avoided had they told us earlier. They waited four months to even tell us that there was a problem. Then they waited two years before they told us that we are holding you and we're opening up commercial discussions of responsibility. They waited two years. They admitted that. Thank you. Thanks very much. We appreciate your arguments and thank you for your briefs. Case will be submitted and the clerk may call the last case.